UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JESSE RODRIGUEZ,                                    :

               Petitioner,               :          07 Civ. 9863 (JSR) (AJP)

      -against-                                :          **REPORT AND RECOMMENDATION**

JAMES CONWAY, Superintendent,                       :
Attica Correctional Facility,
                                                    :
               Respondent.
                                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Jed S. Rakoff, United States District Judge:**

           Pro se petitioner Jesse Rodriguez seeks a writ of habeas corpus from his October 2,

2003 conviction, following a guilty plea in Supreme Court, New York County, of second degree

murder, and sentence of twenty-one years to life imprisonment. (Dkt. No. 1: Petition ["Pet."] ¶¶ 1-

6.)

           Rodriguez's habeas corpus petition asserts that: (1) the trial court "wrongfully

precluded [him] from offering at trial psychiatric evidence in support of his defense of extreme

emotional disturbance" (Pet. ¶ 11(A), incorporating Ex. H[1]: Rodriguez 1st Dep't Br. at 9-13); (2) his

counsel was ineffective for failing to timely file a notice of intent to introduce psychiatric evidence

_____

[1]      References to exhibits in this Report and Recommendation are to the exhibits to the State's
Superseding Appendix, Docket No. 18.

H:\OPIN\RODRIGUEZ-Jesse

in support of an extreme emotional disturbance defense (Pet. ¶ 11(B), incorporating Rodriguez 1st Dep't Br. at 14-25); (3) his guilty plea "was invalid as it was not voluntarily, knowingly, or intelligently made" (Pet. ¶ 11(C), incorporating Rodriguez 1st Dep't Br. at 26-35); and (4) the sentencing court erred in denying his request to substitute counsel (Pet. ¶ 11(D), incorporating Rodriguez 1st Dep't Br. at 35-36).

For the reasons set forth below, Rodriguez's habeas petition should be <u>DENIED</u>.

## FACTS

### Background:  Rodriguez's Crime[2]

On August 4, 2002, Rodriguez, his "common-law wife" Mary Vargas, Vargas' mother and Vargas' seven-year old daughter Delia Agosta were in their Manhattan apartment.  (Ex. I: State 1st Dep't Br. at 1.)  At approximately 6:30 p.m., Rodriguez placed Vargas in a choke-hold and placed her head into a bathtub full of water until she drowned.  (State 1st Dep't Br. at 1-2.)  Rodriguez went into Vargas' mother's bedroom and continually hit her about the body and face with an aluminum bat until she lost consciousness.  (State 1st Dep't Br. at 2.)  Agosta walked into the room and screamed.  (<u>Id</u>.)  Rodriguez dragged Agosta into another room and strangled her, but stopped when he heard Vargas' mother "moving about."  (<u>Id</u>.)  Rodriguez went back into Vargas' mother's room, struck her numerous times with a hammer and stabbed her with a knife.  (<u>Id</u>.)  Agosta returned to Vargas' mother's room and started screaming.  (<u>Id</u>.)  Rodriguez picked up the hammer, but when Agosta cried

---

[2]    The information in this section is taken from the State's First Department Brief, which "obtained [it] from the Probation Department's presentence report and the Voluntary Disclosure Form . . . filed by the People."  (Ex. I: State 1st Dep't Br. at 1 n.1.)

for him to stop, Rodriguez stopped, went up to the building's rooftop and attempted to jump off. (Id.)

The police arrived and pleaded with Rodriguez not to jump. (State 1st Dep't Br. at 2.) Rodriguez responded, "'I don't want to go to jail for the rest of my life. I killed my wife. I killed my daughter . . . We were just arguing.'" (Id.) After being subdued, arrested and Mirandized, Rodriguez explained in two written and one videotaped statements that "the attacks were preceded by an argument with his wife about his failure to find a job." (State 1st Dep't Br. at 2-3.)

**Rodriguez's Notice re Psychiatric Testimony**

A New York County grand jury indicted Rodriguez under indictment number 5016/02 for second degree murder (one count), attempted second degree murder (two counts), first degree assault (two counts) and endangering the welfare of a child (one count). (Ex. K: Indictment; see Ex. I: State 1st Dep't Br. at 3; Ex. H: Rodriguez 1st Dep't Br. at 4.) Rodriguez was arraigned on the indictment on August 22, 2002. (Rodriguez 1st Dep't Br. at 4; State 1st Dep't Br. at 4.)

On October 3, 2002, Rodriguez's counsel served the following "Notice of Intent to Present Psychiatric Testimony":

> Pursuant to C.P.L. § 250.10.1, the defendant, hereby, notifies the prosecution that he intends to present psychiatric evidence to demonstrate that because of mental disease or defect, he lacked the ability to know or appreciate the nature and consequences of his actions or to know that such conduct was wrong under C.P.L. § 250.10.1(a) and P.L. [Penal Law] § 40.15(1) and (2).
>
> Additionally, the defense asserts that his psychiatric condition kept him from forming the necessary mens rea to commit the crimes of murder in the second degree, attempted murder in the second degree, assault in the first degree and endangering the welfare of a child under C.P.L. § 250.10.1(c). The defense asserts that the

defendant was incapable of intending to cause the death of, or serious physical injury to the complainants.

The defense cannot specify the nature of the evidence because it is in the process of obtaining psychiatric evidence. The defense respectfully requests the opportunity to supplement or amend this notice.

(Ex. A: Rodriguez 10/3/02 "Notice of Intent to Present Psychiatric Testimony.")

On March 27, 2003, Rodriguez's counsel filed a supplemental notice of intention to present psychiatric evidence in support of an "extreme emotional disturbance" defense and attached a "Psychological Evaluation" report from clinical psychologist Beverly E. Martin, Ph.D. (Ex. A: Rodriguez 3/27/03 "Supplemental Notice of Intent to Present Psychiatric Testimony" & 3/22/03 Martin Letter.)

Dr. Martin's report was based on two clinical interviews with Rodriguez (on September 25 and November 6, 2002), Rodriguez's August 5, 2002 written and videotaped statements to the police, Rodriguez's lawyer's notes of an August 8, 2002 interview with Rodriguez's mother, and Rodriguez's August 4, 2002 medical records. (Martin Letter at 1.) Dr. Martin noted that Rodriguez's sister was stabbed to death when Rodriguez was nine years old and as a result, Rodriguez suffered from depression. (Martin Letter at 2.) Rodriguez never "act[ed] out" or behaved aggressively towards others, but instead "t[ook] his anger out on himself." (Martin Letter at 2-3, 5.) On two occasions, Rodriguez punched his hand through glass doors after having disputes with girlfriends. (Id.) Rodriguez's mother reported that Rodriguez once "leaned over the terrace in the apartment and wondered if he threw himself off if an angel would catch him." (Martin Letter at 3.) Rodriguez received psychological counseling during high school, but never took any psychological

medications.  (Martin Letter at 2-3.)  After he graduated from high school in 1994, he attended community college but got homesick and dropped out after one semester.  (Martin Letter at 3.)

Rodriguez reported that he began sniffing cocaine in 1995 and continued up until his arrest, albeit with a brief hiatus when he started dating Vargas.  (Martin Letter at 3.)  Although cocaine usually made Rodriguez feel "'more up,'" he felt "'paranoid'" when he sniffed a "relatively large amount."  (Id.)

Rodriguez reported that he had met Vargas in 1998 and lived with her and Agosta "as a family" until Vargas discovered his "cocaine problem." (Martin Letter at 2.)  After they broke up, Rodriguez moved to Tampa, got a job and "was really doing well." (Id.)  Rodriguez asked Vargas to move to Tampa, but Vargas declined due to her lease and her daughter's schooling.  (Id.)  Rodriguez moved back to New York into Vargas', Vargas' mother's and Agosta's apartment.  (Id.)  Rodriguez found it difficult living in the apartment because Vargas' mother would "belittle" Vargas.  (Id.)  Rodriguez did not argue with Vargas' mother, but argued with Vargas about "'not being able to find [a] job and [his] using cocaine again.'"  (Id.)  Rodriguez denied having any prior physical altercations with Vargas or her mother.  (Id.)

Rodriguez recounted that on August 3, 2002, he sniffed very "'strong'" cocaine. (Martin Letter at 3.)[3/]  The next morning, Vargas woke him up and "seemed angry" because he had

---

[3/]      Rodriguez reported that he had used cocaine throughout the week preceding the crime. (Martin Letter at 3.)  The Metropolitan Hospital medical record from the date of Rodriguez's arrest "note[s] that the toxicology screen was positive only for cocaine.  The diagnosis given at that time was cocaine abuse, and the medical examination was consistent with this (continued...)

not found a job.  (Martin Letter at 4.)  Rodriguez left the apartment and sniffed cocaine again.  (Id.)

When he returned, Vargas was not home and Vargas' mother would not open the apartment door for

him.  (Id.)  When Vargas arrived at the apartment,

> "she wouldn't talk to [him].  [He] felt so hot [he] went to take a shower.  [He] wanted
> to talk but she just rolled her eyes."  In the past they had arguments but he felt "she
> was staring at [him] different, like a bad stare." . . . [H]e felt his heart pounding, "like
> triple beats, [he] felt crazy, a lot of emotions."

(Martin Letter at 4.)

Rodriguez provided Dr. Martin with "vivid details" of the attacks.  (Martin Letter at

4.)  "It was as if he was watching a film and not a participant, []i.e. derealization."  (Id.)  According

to Dr. Martin:

> [Rodriguez] noted he could see himself hitting the mother "but [he] couldn't
> stop [himself]."  When he attacked the mother with a hammer, he recalled Delia
> [Agosta] coming to the door crying "Daddy what are you doing?"  At that point "[he]
> saw a light and then saw blood, [he] hadn't noticed the blood before."  He dropped
> the hammer and noted "[he] felt so hot, [his] mouth was so dry."  He took water and
> threw it on himself and then ran up the roof to jump off the ledge.  "But [he] thought
> about [his] family and that it was a sin."  During the choking and drowning of
> Ms. Vargas and the subsequent attacks on the mother and child, Mr. Rodriguez
> reported he could not stop himself.  "[He] snapped. [He] couldn't let go, [he] was so
> scared but couldn't stop."

(Martin Letter at 4.)

During the interview with Dr. Martin, Rodriguez was "reasonably well groomed and

appropriately attired," and was coherent, responsive and oriented.  (Martin Letter at 4.)  Rodriguez

---

3/        (...continued)
          conclusion, e.g., borderline sinus tachycardia."  (Id.)

reported suffering from depression-like symptoms: "'feel[ing] Mary didn't pass away'" sometimes, feeling suicidal, having flashbacks, constantly trying to divert his thoughts and seeing "sparkles" like he is dazed when "'[he] put [his] head down and look[ed] up.'" (Id.)

Dr. Martin concluded that Rodriguez suffered from "undiagnosed and untreated" depressive disorder since childhood and that Rodriguez began using cocaine to cope with his depression. (Martin Letter at 4.) Because Rodriguez did not have a history of violence, Dr. Martin concluded that "the current charges against him appear to be totally out of character" for Rodriguez. (Martin Letter at 5.) Dr. Martin determined that Rodriguez's behavior was consistent with "limbic dyscontrol syndrome." (Id.) Dr. Martin explained the syndrome as follows:

> Research literature has shown that cocaine use is associated with violent rage reactions and has been linked to limbic dyscontrol syndrome. With cocaine use, the limbic system in the brain becomes increasingly hyper excitable, and eventually, even with minor provocation a massive dyscontrol effect may occur. . . . Such "cocaine kindling of the limbic system has been associated with rage attack as well as panic disorder."

(Martin Letter at 5.) Dr. Martin concluded that Rodriguez's behavior was "consistent" with this syndrome because: (1) he reported using cocaine multiple times the week before the incident; (2) he described "feeling overheated, increased heart rate, thirst, scared, and feeling he was unable to control his behavior"; and (3) his reaction was "disproportionate to the reported situation" and his actions were "irrational and lacked any motive." (Martin Letter at 5.) Dr. Martin opined:

> After reviewing the data provided, it is my opinion that Mr. Rodriguez' uncharacteristic behavior pattern is consistent with a cocaine-induced reaction. His reported symptoms on the day of the offense combined with his lack of a behavior pattern of aggressiveness appears to fit the variables associated with limbic dyscontrol syndrome. In light of the behaviors that were reported, it is my opinion

that Mr. Rodriguez acted under the influence of extreme emotional disturbance on the day of the offense.

(Martin Leter at 5.)

## Preclusion of Rodriguez's Psychiatric Evidence

On April1 23, 2003, the State filed a motion to preclude Dr. Martin's testimony, arguing that Rodriguez's notice was untimely pursuant to C.P.L. § 250.10(2).[4/]  (Ex. B: State Psychiatric Evidence Preclusion Br. at 1.)  The prosecutor claimed that the October 3, 2002 notice was insufficient because it did not specify the nature of the psychiatric evidence to be presented. (Ex. B: A.D.A. Hoexter Aff. ¶ 4.)  The prosecutor noted that on February 10, 2003, Rodriguez's counsel "mentioned" that he was planning on serving psychiatric notice and the court adjourned the case to March 13, 2003 for "the specific purpose of defendant to file psychiatric notice."  (A.D.A. Hoexter Aff. ¶¶ 5-6.)  The prosecutor stated that on March 13, 2003, Rodriguez's counsel stated that he was not "prepared" to file the notice and the court told defense counsel that his notice must contain a "good reason" for the delay.  (Hoexter Aff. ¶ 7.)  The prosecutor argued that "the People have been prejudiced by these shortcomings . . . [because] any examination of the defendant would now be conducted over nine months after the commission of this crime."  (State Psychiatric Evidence Preclusion Br. at 6.)

---

[4/]    Under New York Law, a defendant must file written notice of his intention to present psychiatric evidence "before trial and not more than thirty days after entry of the plea of not guilty to the indictment."  C.P.L. § 250.10(2).

Rodriguez's counsel accused the prosecutor of "'sandbagging.'"  (Ex. C: Soto Aff. ¶ 10.)  Rodriguez's counsel stated that he informed the court on February 10, 2003 that the amended psychiatric notice would "contain a change in theory" to "'extreme emotional disturbance'" rather than the prior "theory of inability to form the requisite intent."  (Soto Aff. ¶ 6.)  Rodriguez's counsel also noted that the prosecutor did not oppose his February 10th or March 13th requests for extensions.  (Soto Aff. ¶¶ 6-7.)  Rodriguez's counsel explained that the psychiatrist first interviewed Rodriguez on September 25, 2002, but needed Rodriguez's medical records before reaching any conclusions.  (Soto Aff. ¶ 9.)  Rodriguez's counsel did not receive the medical records from Metropolitan Hospital until March 19, 2003 even though he had ordered the medical records months earlier.  (Id.)  Rodriguez's counsel argued that he complied with C.P.L. § 250.10 because he did "file a [timely initial] notice but candidly informed the Court that additional time was needed before a full report could be prepared," and when the Court granted the defense more time, the prosecutor never objected.  (Soto Aff. ¶¶ 11-12.)

On June 13, 2003, Justice Budd G. Goodman granted the prosecution's motion to preclude Rodriguez from introducing psychiatric evidence.  (Ex. E: Justice Goodman Psychiatric Evidence Decision at 2.)  Justice Goodman reasoned:

> The current notice was served on March 27, 2003.  Supreme Court arraignment occured on August 22, 2002, over seven months before the current notice was served and about 1 1/2 months before any notice was served.
>
> . . . .
>
> [T]he October 3 . . . notice indicated that the defense would argue that the defendant was not responsible for his action because he was incapable of forming the required

intent.  This notice is completely at odds with the current notice, which posits an extreme emotional disturbance caused by a cocaine induced rage.  The defense expert examined the defendant in September, 2002 and in November, 2002.  There is no satisfactory explanation why the October 3 notice, which occurred *after* the expert's first examination, was so misleading as to what the ultimate defense would be.  And there is no persuasive reason why the current notice was filed more than four months after the expert's final examination of the defendant.  The medical records which ostensibly caused the delay are barely mentioned in the report.  Moreover, if the records were as crucial as the defense now claims, there is no excuse for not seeking the court's assistance in obtaining them.  Under the circumstances there is no good cause for the delay in filing the current notice.

As the People have pointed out, that delay has prejudiced their ability to investigate the current defense.  The claim of extended cocaine usage in the days proceeding [sic] the crimes is now virtually impossible to disprove.  Information relevant to the investigation has been lost or forgotten.

For the foregoing reasons, the People's motion to preclude the defendant from introducing psychiatric evidence at trial is granted.

(Justice Goodman Psychiatric Evidence Decision at 2.)

## Rodriguez's Guilty Plea and Sentence

On September 9, 2003, Rodriguez pled guilty before Justice Goodman to one count of second degree murder in full satisfaction of the indictment, with a sentencing agreement of twenty-one years to life imprisonment.  (Ex. F: 9/9/03 Plea Transcript ["P."] 1-8.)  Rodriguez acknowledged under oath that he understood that his plea to one count of second degree murder would "cover all the other charges in the indictment" and that he would "receive a determinate sentence of 21 years to life." (P. 3, 4.)  Rodriguez admitted to intentionally causing Mary Vargas' death on August 4, 2002 by drowning her. (P. 4.)  Rodriguez acknowledged that he understood that he was giving up his right to a trial and the right to contest Justice Goodman's prior ruling that his

confessions were voluntary.  (P. 4-5.)  Rodriguez waived his right to appeal "either the sentence or anything."  (P. 5.)  The following colloquy occurred:

> THE COURT:  Are there any other promises?
>
> [A.D.A.] HOEXTER:  That he will waive his right to appeal.
>
> THE COURT:  You'll have a certificate on the day of sentence.
>
> Also, Mr. Rodriguez, in consideration of your plea you will waive your right to appeal either the sentence or anything?
>
> DEFENDANT:  Yes.
>
> . . . .
>
> THE COURT:  Other than that promise [as to the sentence], has any other promise been made to you by anybody to cause . . . you to take this plea?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Has anybody forced or pressured you or threatened you in any way?
>
> THE DEFENDANT:  No.
>
> . . . .
>
> THE COURT:  Mr. Rodriguez, just so I am clear, at the present time are you taking any medication?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Okay.
>
> And has that medication in any way clouded your mind or prevented you from understanding totally what has just transpired?
>
> THE DEFENDANT:  No.

THE COURT:  You fully comprehend that you are pleading guilty to the charge, it's a plea bargain, and this will cover all another charges for which you could get consecutive time.

You understand theoretically you could get, after conviction at trial, up to 50 years in jail?

THE DEFENDANT:  Yes.

. . . .

THE CLERK:  Jessie Rodriguez, do you now withdraw your previously entered plea of not guilty and do you now enter a plea of guilty to murder in the second degree, the first count of indictment 5016 of 2002.

Is that what you wish to do; plead guilty?

THE DEFENDANT:  Yes.

(P. 5-8.)  Sentencing was set for October 2, 2003.  (P. 8.)

On October 2, 2003, Rodriguez appeared for sentencing and moved to "dismiss" his lawyer because he pled guilty "under the influence of medication" which "wasn't functioning" and because he was "pressured by [his] lawyer to take a Plea offer."  (Ex. G:  10/2/03 Sentencing Tr. ["S."] at 2-3.)  Rodriguez stated, "[a]s you can see, I'm reading off this piece of paper because I cannot think straight.  I'm confused all the time due to the fact that I suffer from Linberg Syndrome." (S. 3.)  Justice Goodman denied Rodriguez's application, noting "[f]or the record, Mr. Rodriguez, there was no problem at the time this plea allocution was made.  [Defense counsel] Mr. Soto worked very hard on this case.  You're lucky.  Could have gone to jail for fifty years."  (S. 3.)  On the issue of the sentence to be imposed, both the prosecutor and Rodriguez's counsel relied upon the plea

bargain promise as to the sentence.  (S. 2-3.)  Justice Goodman sentenced Rodriguez as promised to twenty-years to life imprisonment.  (S. 4.)

**Rodriguez's Direct Appeal**

Represented by new counsel, Rodriguez appealed to the First Department, claiming that:  (1) Justice Goodman "wrongfully precluded [him] from offering at trial psychiatric evidence in support of his defense of extreme emotional disturbance" (Ex. H: Rodriguez 1st Dep't Br. at 9-13); (2) his counsel was ineffective for causing the psychiatric testimony to be prelcuded by not timely filing the required notice (id. at 14-25); (3) Rodriguez's guilty plea was not "voluntarily, knowingly, or intelligently made" (id. at 26-35); and (4) Justice Goodman erred in denying Rodriguez's request to substitute counsel at sentencing (id. at 35-36).

On April 27, 2006, the First Department unanimously affirmed Rodriguez's conviction, holding in full:

> The record establishes the voluntariness of defendant's plea. The plea allocution shows that defendant was rational and coherent during the entire plea proceeding, and when defendant indicated he was on medication, the court appropriately inquired further and satisfied itself that the medication had no effect on his ability to understand the proceedings.  Defendant's claim at sentencing that he had been under the influence of medication at the time of the plea was contradicted by the record, and his conclusory claim that his attorney "pressured" him into pleading guilty was meritless.  Accordingly, neither claim warranted further inquiry by the sentencing court. Similarly, defendant did not establish good cause for substitution of counsel at sentencing.
>
> Appellate review of defendant's challenge to the court's CPL 250.10 ruling precluding psychiatric testimony is foreclosed by the guilty plea.  In addition, defendant's claim that he had a constitutional right to present the precluded evidence is unpreserved; even if it had not been foreclosed by the plea, we would decline to review it in the interest of justice.

On the existing record, to the extent it permits review, we find that defendant received effective assistance under the state and federal standards.

People v. Rodriguez, 28 A.D.3d 403, 403-04, 813 N.Y.S.2d 429, 430 (1st Dep't 2006) (citations omitted).

On May 26, 2006, Rodriguez's counsel submitted a leave letter to the New York Court of Appeals seeking to present the "two important questions raised by this case": (1) "whether Mr. Rodriguez was denied effective assistance of counsel . . . when his assigned counsel had Mr. Rodriguez's only viable defense precluded"; and (2) "whether Mr. Rodriguez was denied his rights to counsel and due process under the State and Federal Constitutions when the sentencing court refused to make even a minimal inquiry before summarily denying Mr. Rodriguez's request for a substitution of counsel." (Dkt. No. 19: Rodriguez 5/26/06 N.Y. Ct. App. Leave Letter.)  The letter did not refer in any way to any other issue.  (Id.)  Rodriguez's counsel submitted a second letter to the Clerk of Court attaching inter alia the First Department briefs, but did not request review of the issues in the briefs.  (Id.)

On August 25, 2006, the New York Court of Appeals denied leave to appeal.  People v. Rodriguez, 7 N.Y.3d 817, 822 N.Y.S.2d 492 (2006).

**Rodriguez's C.P.L. § 440 Motion**[5/]

On February 29, 2008, Rodriguez filed a pro se C.P.L. § 440.10 motion to vacate the judgment.  (Ex. L: Rodriguez 440 Motion.)   Rodriguez argued that:  (1) Justice Goodman "wrongfully precluded" him from introducing psychiatric evidence at trial to support an extreme emotional disturbance defense; (2) his counsel was ineffective for failing to timely serve notice of his intent to introduce psychiatric evidence in support of his extreme emotional disturbance defense and for failing to "cite appropriate authority to support his position against preclusion"; (3) his guilty plea was "not made knowingly, voluntarily, and intelligently"; and (4) Justice Goodman at senencing erred in denying Rodriguez's request for substitution of counsel.  (Rodriguez 440 Motion Aff. ¶ 11.)

On June 24, 2008, Justice Arlene R. Silverman denied Rodriguez's § 440 motion, holding:

> [Rodriguez's four] claims were all previously considered, but rejected, by the Appellate Division.  On this procedural basis alone, defendant's motion must be denied (CPL 440.10(2)(a)).
>
> Additionally, I find no substantive merit to the claims. . . . (2) [Rodriguez]'s attorney rendered effective representation overall.  He filed appropriate motions on [Rodriguez]'s behalf and represented him diligently at all court appearances, including a pretrial Huntley hearing, plea and sentencing.  In a case containing overwhelming evidence of numerous, violent crimes involving three victims, as well as multiple confessions, [Rodriguez] received a significantly favorable plea bargain. While he may not have received "perfect" representation, without question, he received the "meaningful representation" required under the law. (3) Similarly, there

---

[5/]   When Rodriguez filed his habeas petition, he had not exhausted his ineffective assistance of counsel claim.  (See Dkt. No. 4: 1/28/08 Order.)  On January 28, 2008, this Court ordered Rodriguez to file a C.P.L. § 440 motion in Supreme Court, New York County, in order to fully exhaust the claim. (1/28/08 Order.)

is no valid basis for the claim that [Rodriguez]'s plea and waiver were not knowingly, voluntarily or intelligently made.  The Court engaged [Rodriguez] in an extended allocution, including addressing specifically the issue of medication and whether it "in any way clouded [Rodriguez]'s mind or prevented [him] from understanding what has just transpired."  Defendant's claim that he "cannot think straight" and was "confused all the time" - raised for the first time at his sentencing - is as unpersuasive to this Court as it was to Justice Goodman and the appellate court.  (4) Finally, Justice Goodman's denial of defendant's request for a new attorney, made for the first time at sentencing, was proper, since such requests should be based upon "good cause" such as conflict of interest or other irreconcilable conflict and not "merely to delay the orderly administration of justice."

Based upon the foregoing, [Rodriguez]'s motion to vacate his conviction is denied.

(Dkt. No. 14: Gliner 11/3/08 Letter Ex.: Justice Silverman 440 Decision at 2, citations omitted.)

On September 25, 2008, the First Department denied leave to appeal from Justice Silverman's denial of Rodriguez's C.P.L. § 440.10 motion.  People v. Rodriguez, Ind. No. 5016/02, 2008 WL 4346737 at *1 (1st Dep't Sept. 25, 2008).  On November 5, 2008, the Court of Appeals dismissed Rodriguez's application for leave to appeal from the First Department's denial of leave to appeal.  People v. Rodriguez, 11 N.Y.3d 857, 872 N.Y.S.2d 80 (2008).

**Rodriguez's Federal Habeas Corpus Petition**

Rodriguez's habeas corpus petition asserts that:  (1) the trial court "wrongfully precluded [him] from offering at trial psychiatric evidence in support of his defense of extreme emotional disturbance" (Dkt. No. 1: Pet. ¶ 11(A), incorporating Ex. H: Rodriguez 1st Dep't Br. at 9-13); (2) his counsel was ineffective for failing to timely file a notice of intent to introduce psychiatric evidence in support of an extreme emotional disturbance defense (Pet. ¶ 11(B), incorporating Rodriguez 1st Dep't Br. at 14-25); (3) his guilty plea "was invalid as it was not

voluntarily, knowingly, or intelligently made" (Pet. ¶ 11(C), incorporating Rodriguez 1st Dep't Br. at 26-35); and (4) the sentencing court erred in denying his request substitute counsel (Pet. ¶ 11(D), incorporating Rodriguez 1st Dep't Br. at 35-36).

## ANALYSIS

I.     THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[6/]

---

[6/]     See also, e.g., Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v.
(continued...)

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 404-05, 120 S. Ct. at 1519.[7]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 412, 120 S. Ct. at 1523.[8]  "That federal law, as defined by the

---

[6]    (...continued)
<u>Donnelly</u>, 387 F.3d 193, 197 (2d Cir. 2004); <u>Dallio</u> v. <u>Spitzer</u>, 343 F.3d 553, 559-60 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 961, 124 S. Ct. 1713 (2004); <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting <u>Lainfiesta</u> v. <u>Artuz</u>, 253 F.3d 151, 155 (2d Cir. 2001), <u>cert. denied</u>, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[7]    <u>Accord</u>, <u>e.g.</u>, <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d 175, 181 (2d Cir.), <u>cert. denied</u>, 540 U.S. 1091, 124 S. Ct. 962 (2003); <u>Jones</u> v. <u>Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000); <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d 113, 125 (2d Cir. 2000), <u>cert. denied</u>, 532 U.S. 943, 121 S. Ct. 1404 (2001); <u>Clark</u> v. <u>Stinson</u>, 214 F.3d 315, 320 (2d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[8]    <u>Accord</u>, <u>e.g.</u>, <u>Carey</u> v. <u>Musladin</u>, 549 U.S. 70, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed]' clearly established Federal law.'"); <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); <u>Rodriguez</u> v. <u>Miller</u>, 499 F.3d 136, 140 (2d Cir. 2007) ("'Clearly established federal law' refers only to the holdings of the Supreme Court.  No principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief.  Leading by example, <u>Musladin</u> admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions.") (citations & fn. omitted), <u>cert. denied</u>, 128 S. Ct. 1655 (2008); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d 587, 591 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1047, 124 S. Ct. 2171 (2004); <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d
(continued...)

Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42; <u>accord</u>, <u>e.g.</u>, <u>Davis</u> v. <u>Grant</u>, 532 F.3d 132, 140 (2d Cir. 2008), <u>cert. denied</u>, -- S. Ct. --, 2009 WL 425166 at *1 (Feb. 23, 2009).  "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent."  <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 110; <u>accord</u>, <u>e.g.</u>, <u>Rodriguez</u> v. <u>Miller</u>, 499 F.3d at 140; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

<u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[9]

---

[8]   (...continued)
at 181; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d 1197, 1200 (2d Cir. 2002); <u>Yung</u> v. <u>Walker</u>, 341 F.3d 104, 109-110 (2d Cir. 2003); <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d 36, 42 (2d Cir.), <u>cert. denied</u>, 537 U.S. 909, 123 S. Ct. 251 (2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d 178, 184 (2d Cir. 2001); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 309 (2d Cir. 2001).

[9]   <u>Accord</u>, <u>e.g.</u>, <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Brown</u> v. <u>Payton</u>, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone</u>, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent</u>, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 123 S. Ct. at 1173-74; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d 238, 242 (2d Cir. 2006), <u>cert. denied</u>, 549 U.S. 1215, 127 S. Ct. 1267 (2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210, 219 (2d Cir.), <u>cert. denied</u>, 546 U.S. 889, 126 S. Ct.
(continued...)

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[10/]  However, "[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct. at 1522.  The Supreme Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." Id.[11/]  Rather, the issue is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor,

---

[9/]  (...continued)
215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[10/]  Accord, e.g., Wadddington v. Sarausad, 129 S. Ct. 823, 831 (2009); Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

[11/]  See also, e.g., Wadddington v. Sarausad, 129 S. Ct. at 831; Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Jones v. West, 555 F.3d at 96; Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d), we may not grant habeas relief even if in our judgment its application was erroneous.").

529 U.S. at 409, 120 S. Ct. at 1521.[12/]  "Objectively unreasonable" is different from "clear error."

Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper

deference to state courts by conflating error (even clear error) with unreasonableness.").  However,

the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is

required . . . the increment need not be great; otherwise, habeas relief would be limited to state court

decisions so far off the mark as to suggest judicial incompetence.'"  Jones v. Stinson, 229 F.3d at 119

(quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).[13/]  "[T]he range of reasonable

judgment can depend in part on the nature of the relevant rule."  Yarborough v. Alvarado, 541 U.S.

at 663, 124 S. Ct. at 2149.[14/]  "Even if the state court issues a decision 'contrary to' clearly established

---

[12/]   Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct.
at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti,
537 U.S. at 25-27, 123 S. Ct. at 360-61; Davis v. Grant, 532 F.3d at 140; Mosby v.
Senkowski, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 128 S. Ct. 75 (2007); Hawkins
v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at
68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v.
Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v.
Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[13/]   Accord, e.g., Jones v. West, 555 F.3d at 96; Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden,
443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa
v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski,
321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio
v. Goord, 263 F.3d at 184.

[14/]   The Supreme Court explained:

    [T]he range of reasonable judgment can depend in part on the nature of the relevant
    rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule
    may be plainly correct or incorrect.  Other rules are more general, and their meaning
    (continued...)

Supreme Court law, . . . a petitioner 'cannot obtain relief . . . unless application of a *correct* interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'" Cousin v. Bennett, 511 F.3d 334, 339 (2d Cir.), cert. denied, 128 S. Ct. 2910 (2008).

Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." Kennaugh v. Miller, 289 F.3d at 45.[15/]

---

14/   (...continued)

must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Rodriguez v. Miller, 499 F.3d at 143; Hawkins v. Costello, 460 F.3d at 243.

15/   Accord, e.g., Davis v. Grant, 532 F.3d at 140-41; Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply it to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and extending it is not always clear.  Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference."  Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Mosby v. Senkowski, 470 F.3d at 519; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "if any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division

concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference."); but cf. Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (A "contrary-to-fact construction is not the same as an alternative holding. . . . We decline to read a contingent observation as an 'adjudication on the merits.'"  De novo review applies in such a case.).

Where the state court decision is not clear as to whether it rests on federal law or state procedural law, the Second Circuit in Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), cert. denied, 549 U.S. 1133, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in Coleman, Quirama and Sellan" – that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." Jimenez v. Walker, 458 F.3d at 145 & n.16; accord, e.g., Clark v. Perez, 510 F.3d 382, 394 (2d Cir.), cert. denied, 129 S. Ct. 130 (Oct. 6, 2008).  Using these three factors, the court should

> classify the decision as either:
>
> (1)   fairly appearing to rest primarily on federal law or to be interwoven with federal law or
>
> (2)   fairly appearing to rest primarily on state procedural law.

Absent a clear and express statement of reliance on a state procedural bar, the Harris presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim.  Such decisions are not procedurally barred and

must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d).  The Harris presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar.  Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar.  No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.

The effect of these rules is to present federal habeas courts with a binary circumstance:  we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised.  The middle ground . . . does not exist.

Jimenez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello, 460 F.3d at 242 ("In Jimenez v. Walker, we recently made clear that when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits.").  Of course, "[i]f there is no [state court] adjudication on the merits [and no procedural bar], then the pre-AEDPA, de novo standard of review applies."  Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Jimenez v. Walker, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless."  Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations:  "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220.  "The petitioner bears the burden

of 'rebutting the presumption of correctness by clear and convincing evidence.'"  Parsad v. Greiner,

337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47.

## II.   RODRIGUEZ'S PRECLUSION OF PSYCHIATRIC EVIDENCE AND INVOLUNTARY PLEA HABEAS CLAIMS ARE PROCEDURALLY BARRED FROM HABEAS REVIEW

Rodriguez's habeas claims that Justice Goodman "wrongfully precluded [him] from

offering at trial psychiatric evidence in support of his defense of extreme emotional disturbance"

(Dkt. No. 1: Pet. ¶ 11(A)) and that his guilty plea was involuntary (Pet. ¶ 11(C)) are procedurally

barred from habeas review because they were not presented to the New York Court of Appeals.

### A.   Rodriguez's Preclusion of Psychiatric Evidence and Involuntary Plea Habeas Claims Are Unexhausted but Deemed Exhausted and Procedurally Barred from Habeas Review

#### 1.   The Exhaustion Doctrine:  Background

Section 2254 codifies the exhaustion requirement, providing that "[a]n application

for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court

shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available

in the courts of the State. . . ."  28 U.S.C. § 2254(b)(1)(A).[16/]  As the Supreme Court has made clear,

"[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement

---

[16/]    See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Rose v. Lundy, 455 U.S. 509, 515-16, 102 S. Ct. 1198, 1201 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948" in 28 U.S.C. § 2254.); Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990); Daye v. Attorney Gen., 696 F.2d 186, 190-94 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048, 104 S. Ct. 723 (1984).

of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. at 518, 102 S. Ct. at 1203; accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 845, 119 S. Ct. at 1732.

       The Second Circuit determines whether a claim has been exhausted by applying a two-step analysis:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

Diaz v. Coombe, 97 Civ. 1621, 1997 WL 529608 at *3 (S.D.N.Y. June 12, 1997) (Mukasey, D.J. & Peck, M.J.) (quoting Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981)); accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 843-48, 119 S. Ct. at 1732-34.

       "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney Gen., 696 F.2d at 191.[17/]  The Second Circuit has held that a federal habeas petitioner must have alerted the state appellate court that a federal constitutional claim is at issue. E.g., Cox v. Miller, 296 F.3d at 99; Jones v. Vacco, 126 F.3d at 413-14; Grady v. LeFevre, 846 F.2d 862, 864 (2d Cir. 1988); Petrucelli v. Coombe, 735 F.2d 684, 688-89 (2d Cir. 1984); Daye v. Attorney Gen., 696 F.2d at 191.  In Daye, the Second Circuit en banc stated:

---

[17/]    Accord, e.g., O'Sullivan v. Boerckel, 526 U.S. at 844, 119 S. Ct. at 1732; Picard v. Connor, 404 U.S. at 275-76, 92 S. Ct. at 512; Jones v. Keane, 329 F.3d 290, 294-95 (2d Cir.), cert. denied, 540 U.S. 1046, 124 S. Ct. 804 (2003); Cox v. Miller, 296 F.3d 89, 99 (2d Cir. 2002), cert. denied, 537 U.S. 1192, 123 S. Ct. 1273 (2003); Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997).

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen., 696 F.2d at 194.[18/]

### 2. Rodriguez's Preclusion and Involuntary Plea Claims Were Not Presented to the New York Court of Appeals and thus Are Unexhausted but Deemed Exhausted and Procedurally Barred

On direct appeal, Rodriguez's appellate counsel raised four claims before the First Department, including the psychiatric evidence preclusion and involuntary guilty plea claims. (See page 13 above.) The First Department held that: (1) a challenge to Justice Goodman's preclusion ruling was "foreclosed by [Rodriguez's] guilty plea" and unpreserved, and (2) the "record establishe[d] the voluntariness of [Rodriguez]'s plea." People v. Rodriguez, 28 A.D.3d 403, 403-04, 813 N.Y.S.2d 429, 430 (1st Dep't 2006).

Rodriguez's appellate counsel's letter seeking leave to appeal to the New York Court of Appeals presented lengthy argument about two issues: (a) that trial counsel was ineffective for

---

[18/]    Accord, e.g., Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005); Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005); Rosa v. McCray, 396 F.3d 210, 217-18 (2d Cir.), cert. denied, 126 S. Ct. 215 (2005); St. Helen v. Senkowski, 374 F.3d 181, 182-83 (2d Cir. 2004), cert. denied, 543 U.S. 1058, 125 S. Ct. 871 (2005); Cox v. Miller, 296 F.3d at 99; Ramirez v. Attorney Gen., 280 F.3d 87, 95 (2d Cir. 2001); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 124 (2d Cir. 1995); cert. denied, 520 U.S. 1106, 117 S. Ct. 1112 (1997); Grady v. LeFevre, 846 F.2d at 864; Garofolo v. Coombe, 804 F.2d 201, 206 (2d Cir. 1986); Petrucelli v. Coombe, 735 F.2d at 688.

having "Mr. Rodriguez's only viable defense precluded," and (b) that Justice Goodman erred in denying Rodriguez's request to substitute counsel.  (See page 14 above.)  Rodriguez's appellate counsel's leave letter did not refer to any other issue.  (See page 14 above.)  Rodriguez's counsel submitted a separate letter to the Clerk of Court enclosing, inter alia, the First Department briefs, but did not request review of any issues contained in the briefs.  (See page 14 above.)

The Supreme Court has confirmed the long-held view of the Second Circuit that "a state prisoner must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement."  O'Sullivan v. Boerckel, 526 U.S. 838, 839-40, 119 S. Ct. 1728, 173 (1999).[19/]

Merely attaching Rodriguez's First Department briefs – and in a letter to the Clerk of Court, not a Court of Appeals Judge – is not sufficient to have exhausted the claims in the New

---

[19/]    Accord, e.g., accord, e.g., Rosa v. McCray, 396 F.3d 210, 217 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Galdamez v. Keane, 394 F.3d 73 (2d Cir.), cert. denied, 544 U.S. 1025, 125 S. Ct. 1996 (2005); Calderon v. Keane, 115 Fed. Appx. 455, 457 (2d Cir. 2004); Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003); Ramirez v. Attorney Gen., 280 F.3d 87, 94 (2d Cir. 2001); Jordan v. LeFevre, 206 F.3d 196, 198 (2d Cir. 2000); Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir.), cert. denied, 531 U.S. 819, 121 S. Ct. 59 (2000); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'"), cert. denied, 514 U.S. 1054, 115 S. Ct. 1436 (1995); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) ("a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) ("We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition," citing Daye); Daye v. Attorney Gen., 696 F.2d 186, 191 n.3 (1982) ("Exhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had.").

York Court of Appeals, in light of the lengthy discussion of the two separate claims in Rodriguez's leave to appeal letter.  In <u>Grey</u> v. <u>Hoke</u>, the petitioner argued one claim in his leave to appeal letter to the New York Court of Appeals, and also attached his Appellate Division briefs, which had raised that issue plus two others.  933 F.2d at 120.  The Second Circuit held that the claims referred to only in his attached briefs were not exhausted:

> Petitioner argues that by attaching his Appellate Division brief to his letter application to the Court of Appeals, he presented that court with an opportunity to rule on his sentencing and prosecutorial misconduct claims.  He concedes, however, that his letter application requested that the Court of Appeals review only the search and seizure claim. The letter made no mention of the sentencing and prosecutorial misconduct claims.  Under these circumstances, we disagree with petitioner's assertion that the Court of Appeals was presented with his sentencing and prosecutorial misconduct claims.
>
> <u>The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned.  The only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court.  This did not fairly apprise the court of the two claims. We decline to presume that the New York Court of Appeals has "a duty to look for a needle in a paper haystack."</u>  For a federal court to hold that a state court had the opportunity to rule on a constitutional claim as to which no ruling was requested, and then to rule on the merits of the claim itself, would undermine the very considerations of comity that the rules of exhaustion were designed to protect.

<u>Grey</u> v. <u>Hoke</u>, 933 F.2d at 120 (emphasis added & citations omitted).

Subsequent to <u>Grey</u> v. <u>Hoke</u>, in <u>Jordan</u> v. <u>LeFevre</u>, 22 F. Supp. 2d 259, 267 (S.D.N.Y. 1998) (Mukasey, D.J. & Peck, M.J.), <u>aff'd on this ground, rev'd on other grounds</u>, 206 F.3d 196, 198-99 (2d Cir. 2000), the petitioner clearly raised his <u>Batson</u> claim in his letter seeking leave to appeal to the New York Court of Appeals, but, "[a]fter discussing the <u>Batson</u> issue at length, Jordan's counsel asked for leave to appeal '[f]or all of these reasons and the reasons set forth

in his Appellate Division briefs,' and noted that '[i]n support of his application, Mr. Jordan relies on this letter and on the briefs he filed in the Appellate Division.'"  <u>Jordan</u> v. <u>LeFevre</u>, 22 F. Supp. 2d at 267.  This Court held the non-<u>Batson</u> claims to be unexhausted, and the Second Circuit affirmed that view, explaining that "arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction . . . . <u>Counsel may not transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly pointed out in the application for leave</u>."  <u>Jordan</u> v. <u>LeFevre</u>, 206 F.3d at 199 (emphasis added).  The Second Circuit affirmed the exhaustion issue "substantially for the reasons set out in [this Court's] thorough opinion and order . . . .  <u>Jordan</u> v. <u>LeFevre</u>, 22 F. Supp. 2d 259, 266-69 (S.D.N.Y.1998)."  <u>Jordan</u> v. <u>LeFevre</u>, 206 F.3d at 199.

Other Second Circuit[20] and district court decisions within the Circuit[21] have applied

---

[20] See, e.g., Ramirez v. Atorney Gen., 222 Fed. Appx. 80, 81-82 (2d Cir. 2007) (denying review of petitioner's claim where a "bare citation" to a page of App. Div. briefs in petitioner's application for leave to appeal did not provide a "sufficient basis for that claim"); Brown v. Senkowski, 152 Fed. Appx. 15, 18 (2d Cir. 2005) (Petitioner's inclusion of App. Div. briefs to the Court of Appeals "did not alert the Court of Appeals as to the federal nature of his claim"), cert. denied, 546 U.S. 1189, 126 S. Ct. 1375 (2006); Smith v. Duncan, 411 F.3d 340, 345 (2d Cir. 2005) (following Grey v. Hoke in denying petitioner's claim because he had not raised it in his leave to appeal letters to the Court of Appeals although he had attached his App. Div. briefs); DiGuglielmo v. Smith, 366 F.3d 130, 134-135 (2d Cir. 2004) (declining petitioner's request to overrule the Grey v. Hoke and Jordan v. LeFevre principle that merely attaching an appellate brief without explicitly alerting the New York Court of Appeals to each claim raised does not fairly present such claims for exhaustion purposes); DiGuglielmo v. Senkowski, 42 Fed. Appx. 492, 495 (2d Cir. 2002) (leave application that "fully argued several state law claims and then made only a passing reference to other arguments raised in supplemental materials" was "inadequate to alert the New York Court of Appeals to other claims found in his Appellate Division materials" and therefore "'[did] not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction.'") (quoting Jordan v. LeFevre, 206 F.3d at 199); Ramirez v. Attorney Gen., 280 F.3d at 97 (citation to petitioner's attached App. Div. brief referring only to "this issue" "was not, therefore, a request 'to consider and review' other issues raised in the referenced points of the brief." "References to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granted leave to appeal.").

[21] See, e.g., Brown v. Perlman, 07 Civ. 8672, 2008 WL 2009220 at *2 & n.36 (S.D.N.Y. May 8, 2008) (Peck, M.J.) (citing cases), report & rec. adopted, 2008 WL 2545066 (S.D.N.Y. June 23, 2008); Hornedo v. Artus, No. 04-CV-3201, 2008 WL 346360 at *9 n.11 (E.D.N.Y. Feb. 6, 2008) (petitioner did not fulfill the exhaustion requirement by merely attaching his App. Div. briefs to his application to the Court of Appeals); Marshall v. McLaughlin, 04 Civ. 10154, 2007 WL 2438380 at *7 (S.D.N.Y. Aug. 24, 2007) (following Jordan); Bailey v. Ercole, 06 Civ. 5811, 2007 WL 4707738 at *11 (S.D.N.Y. Aug. 17, 2007) (merely enclosing App. Div. briefs in leave letter arguing only one claim does not fairly apprise the Court of Appeals that petitioner means to bring all the claims raised in his briefs); Chung v. Filion, No. 03-CV-1913, 2007 WL 749725 at *3 (E.D.N.Y. Mar. 7, 2007) ("Petitioner's letters plainly demonstrate that the New York State Court of Appeals did not have a fair opportunity to consider his claims" when petitioner argued one claim and only

(continued...)

21/    (...continued)
made a passing reference to his attached briefs); Fabricio v. Artus, 06 Civ. 2049, 2007 WL
119462 at *4 (S.D.N.Y. Jan. 11, 2007) ("Case law makes clear that where a defendant
seeking leave to appeal addresses a specific issue or issues in his leave letter, the mere
enclosure of the Appellate Division briefs is insufficient to constitute exhaustion of any
additional issues."); Lopez v. Fischer, 05 Civ. 2558, 2006 WL 2996548 at *5-6 (S.D.N.Y.
Oct. 16, 2006); Oquendo v. Senkowski, 452 F. Supp.2d 359, 367 (S.D.N.Y. 2006) ("When
a petitioner's appeal application letter mentions some of his claims while an attached brief
details other[s], the claims not mentioned in the application letter are not fairly presented,"
even where App. Div. briefs are enclosed.); Williams v. Phillips, 433 F. Supp. 2d 303, 317-
18 (W.D.N.Y. 2006); Martinez v. Kelly, 01 Civ. 11570, 2005 WL 1863854 at *7 (S.D.N.Y.
Aug. 4, 2005), aff'd, No. 05-4714, 253 Fed. Appx. 127, 2007 WL 3256830 (2d Cir. Nov. 6,
2007), cert. denied, 129 S. Ct. 111 (2008); Gillespie v. Miller, 04 Civ. 0295, 2004 WL
1689735 at *11 (S.D.N.Y. July 29, 2004) (Peck, M.J.) (Reference to petitioner's
supplemental pro se 1st Dep't brief "is not sufficient to have exhausted the claims in the New
York Court of Appeals, especially in light of the lengthy discussion of the two separate
claims by his appellate counsel."); Figueroa v. Greiner, 02 Civ. 2126, 2002 WL 31356512
at *12-13 (S.D.N.Y. Oct. 18, 2002) (Peck, M.J.) (merely attaching and mentioning 1st Dep't
brief is not sufficient to exhaust claims in the New York Court of Appeals especially in light
of lengthy discussion of other claim); Cook v. Pearlman, 212 F. Supp.2d 258, 263 (S.D.N.Y.
2002) (where petitioner's attached appellate brief raised three grounds for reversal, but his
application only argued one of those grounds, the other two claims were not fairly presented
to the Court of Appeals); Valdez v. Mazzuca, No. 00-CV-4961, 2002 WL 1364089 at * 2
(E.D.N.Y. June 21, 2002) ("petitioner did not fairly present his ineffective assistance of trial
counsel claim to the New York Court of Appeals because petitioner's application for leave
to appeal discusses another claim but does not mention the ineffective assistance of trial
counsel claim"); Fernandez v. Artuz, 97 Civ. 2989, 2002 WL 977372 at * 2 (S.D.N.Y. May
9, 2002) (Petitioner failed to exhaust all other claims when he "only argued his confrontation
claim to the New York Court of Appeals[,] . . . did not refer to any other claim in his leave
application[, and] . . . merely stated that the Court of Appeals should grant his leave
application '[f]or all of the foregoing reasons stated in appellant's brief.'"), aff'd, 82 Fed.
Appx. 48 (2d Cir. 2003), cert. denied, 541 U.S. 950, 124 S. Ct. 1687 (2004); Simpson v.
Miller, No. 97-CV-2203, 2002 WL 923913 at *6 (E.D.N.Y. Apr. 30, 2002) (because
"petitioner's application for leave to appeal discuss[ed] two other claims but [did] not
mention the improper jury instruction and prosecutorial misconduct claims[,]" the latter two
claims were not fairly presented to the Court of Appeals); Campos v. Portuondo, 193 F.
Supp. 2d 735, 745 (S.D.N.Y. 2002) (Petitioner's "discussion of his single claim at length
(continued...)

Grey and Jordan to situations where the defendant discussed one or more issues at length and also referred to enclosed Appellate Division briefs, without specifically asking the Court of Appeals to review other issues in the enclosed briefs.

Here, as in Grey, Jordan and their progeny, Rodriguez's attachment of his First Department briefs (in a letter to the Clerk of Court) is insufficient to put the New York Court of Appeals on notice that it should review the additional claims in Rodriguez's First Department briefs, and would require state courts to look for a "needle in a hay stack" while a petitioner argues "one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim." Jordan v. LeFevre, 206 F.3d at 198-99.

Thus, Rodriguez did not fairly present the psychiatric evidence preclusion and involuntary plea claims to the New York Court of Appeals.  Rodriguez's psychiatric evidence

---

[21] (...continued)
along with the submission attaching a brief containing additional claims '[did] not fairly apprise the state court of those remaining claims.'"), aff'd, 320 F.3d 185 (2d Cir.), cert. denied, 540 U.S. 958, 124 S. Ct. 415 (2003); Bailey v. People, 01 Civ. 1179, 2001 WL 640803 at *4-5 (S.D.N.Y. June 8, 2001) (Peck, M.J.) (petitioner's "mere enclosure of his Appellate Division briefs in his leave to 5ppeal application, while discussing a single claim at length, is not sufficient" to have exhausted his other claims); Kirby v. Senkowski, 141 F. Supp. 2d 383, 391-93 (S.D.N.Y. 2001) (sufficiency of evidence claim unexhausted where petitioner submitted App. Div. briefs to Court of Appeals but failed to mention that claim anywhere in follow up leave letter which focused on other unrelated claims), aff'd, 61 Fed. Appx. 765 (2d Cir. 2003); Snead v. Artuz, 99 Civ. 2406, 2001 WL 199409 at *3-4 (S.D.N.Y. Feb. 28, 2001) (where petitioner raised only one issue in leave to appeal letter, other issues unexhausted even though discussed in App. Div. brief accompanying letter); Perez v. Greiner, 99 Civ. 11806, 2000 WL 915114 at *3-6 (S.D.N.Y. July 5, 2000) (Peck, M.J.) (lengthy discussion of one issue plus submission of 1st Dep't briefs not sufficient to exhaust the issues raised only in the brief).

preclusion and involuntary guilty plea claims should be <u>DENIED</u> as unexhausted but deemed

exhausted and procedurally barred from habeas review.[22]

**B.    <u>In Any Event, Rodriguez's Involuntary Guilty Plea Claim is Meritless</u>**

**1.    <u>Legal Principles Governing Guilty Pleas</u>**

Constitutional due process requires that a guilty plea be voluntary, knowing and

intelligent.  <u>E.g.</u>, <u>Bradshaw</u> v. <u>Stumpf</u>, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405 (2005); <u>United</u>

<u>States</u> v. <u>Ruiz</u>, 536 U.S. 622, 629, 122 S. Ct. 2450, 2455 (2002); <u>Bousley</u> v. <u>United States</u>, 523 U.S.

614, 618, 118 S. Ct. 1604, 1609 (1998); <u>Mabry</u> v. <u>Johnson</u>, 467 U.S. 504, 508, 104 S. Ct. 2543,

2546-47 (1984); <u>Brady</u> v. <u>United States</u>, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970); <u>Boykin</u>

v. <u>Alabama</u>, 395 U.S. 238, 242-43 & n.5, 89 S. Ct. 1709, 1711-12 & n.5 (1969).[23]

---

[22]    To avoid a procedural default on his unexhausted claims, Rodriguez would have to "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice,'" <u>i.e.</u>, a showing of "actual innocence."  <u>Harris</u> v. <u>Reed</u>, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989) (citations omitted); <u>accord</u>, <u>e.g.</u>, <u>Schlup</u> v. <u>Delo</u>, 513 U.S. 298, 324-27, 115 S. Ct. 851, 865-67 (1995); <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); <u>see also</u>, <u>e.g.</u>, <u>Messiah</u> v. <u>Duncan</u>, 435 F.3d 186, 195 (2d Cir. 2006); <u>Green</u> v. <u>Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005); <u>Smith</u> v. <u>Duncan</u>, 411 F.3d at 347; <u>DeBerry</u> v. <u>Portuondo</u>, 403 F.3d 57, 64 (2d Cir.), <u>cert. denied</u>, 546 U.S. 884, 126 S. Ct. 225 (2005); <u>St. Helen</u> v. <u>Senkowski</u>, 374 F.3d at 183-84; <u>DiGuglielmo</u> v. <u>Smith</u>, 366 F.3d at 135;  <u>Jones</u> v. <u>Vacco</u>, 126 F.3d 408, 415 (2d Cir. 1997); <u>Glenn</u> v. <u>Bartlett</u>, 98 F.3d 721, 724 (2d Cir. 1996), <u>cert. denied</u>, 520 U.S. 1108, 117 S. Ct. 1116 (1997); <u>Velasquez</u> v. <u>Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990).  Rodriguez has not alleged cause and prejudice nor has he made a showing of actual innocence.

[23]    <u>See also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Adams</u>, 448 F.3d 492, 497-98 (2d Cir. 2006); <u>Hanson</u> v. <u>Phillips</u>, 442 F.3d 789, 798 (2d Cir. 2006); <u>Wilson</u> v. <u>McGinnis</u>, 413 F.3d 196, 198-99 (2d Cir. 2005); <u>Innes</u> v. <u>Dalsheim</u>, 864 F.2d 974, 977 (2d Cir. 1988), <u>cert. denied</u>, 493 U.S. 809,

(continued...)

"The standard for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Urena v. People of the State of New York, 160 F. Supp. 2d 606, 610 (S.D.N.Y. 2001) (Weinstein, D.J.) (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)). A plea is involuntary where the defendant did not have "'knowledge of the nature of the constitutional protections he will forgo by entering his plea.'" Marcelin v. Garvin, 97 Civ. 2996, 1999 WL 977221 at *5 (S.D.N.Y. Oct. 26, 1999) (Peck, M.J.) (quoting Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert. dismissed, 479 U.S. 805, 107 S. Ct. 248 (1986)). "A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced." Heron v. People, 98 Civ. 7941, 1999 WL 1125059 at *5 (S.D.N.Y. Dec. 8, 1999); see, e.g., United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008) ("[T]he Supreme Court has instructed that, with regard to voluntariness, a guilty plea 'must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'"); Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir.) ("[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing

---

[23]/        (...continued)
             110 S. Ct. 50 (1989).

the defendant's will, or the defendant's sheer inability to weigh his options rationally."), cert. denied, 488 U.S. 890, 109 S. Ct. 224 (1988).[24/]  A "'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper.'"  Bousley v. United States, 523 U.S. at 619, 118 S. Ct. at 1609 (ellipses omitted) (quoting Brady v. United States, 397 U.S. at 744, 90 S. Ct. at 1472)).[25/]

---

[24/]    See also, e.g., White v. Walker, No. 01-CV-0238, 2007 WL 169702 at *11 (N.D.N.Y. Jan. 18, 2007) (quoting Heron); Jones v. Perlman, 05 Civ. 5338, 2006 WL 490055 at *1 (S.D.N.Y. Feb. 28, 2006) ("The Supreme Court has held that a guilty plea is intelligent and voluntary when the defendant had the advice of counsel, understood the consequences of the plea, and was not physically or mentally coerced."); Bastien v. William, 03 Civ. 5749, 2004 WL 2978283 at *4 (S.D.N.Y. Dec. 20, 2004); France v. Strack, No. 99-CV-2510, 2001 WL 135744 at *3 (E.D.N.Y. Jan. 30, 2001) ("Pleading guilty to avoid a more severe sentence does not in itself qualify as involuntary because the plea can nonetheless be the 'product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage.'"); Ramirez v. Headley, 98 Civ. 2603, 1998 WL 788782 at *5 (S.D.N.Y. Nov. 10, 1998); Martuzas v. Reynolds, 983 F. Supp. 87, 94 (N.D.N.Y. 1997) (Pooler, D.J.); Phan v. McCoy, No. 94-CV-1596, 1997 WL 570690 at *6 (N.D.N.Y. Aug. 28, 1997) (Pooler, D.J.) ("The mere fact that a defendant pleaded guilty solely to limit his possible penalty does not make that plea involuntary."); United States v. Millan-Colon, 829 F. Supp. 620, 635 (S.D.N.Y. 1993), aff'd, 17 F.3d 14 (2d Cir. 1994).

[25/]    Accord, e.g., Mabry v. Johnson, 467 U.S. at 509, 104 S. Ct. at 2547; United States v. Doe, 537 F.3d at 211; McMahon v. Hodges, 382 F.3d 284, 290 (2d Cir. 2004); United States v. Rossillo, 853 F.2d 1062, 1064 (2d Cir. 1988); Gervais v. United States, No. 08-CV-22, 2008 WL 1994944 at *5 (E.D.N.Y. May 5, 2008) (Weinstein, D.J.); Davila v. United States, No. 07-CV-1320, 2008 WL 906691 at *11 (E.D.N.Y. Mar. 31, 2008) (Weinstein, D.J.); King v. Cunningham, 442 F. Supp. 2d 171, 183 (S.D.N.Y. 2006); Smith v. Burge, 03 Civ.8648, 2005 WL 78583 at *13 (S.D.N.Y. Jan. 12, 2005); Marcelin v. Garvin, 1999 WL 977221 at *5; Smylis v. City of New York, 25 F. Supp. 2d 461, 465 (S.D.N.Y. 1998); see also, e.g., Willbright v. Smith, 745 F.2d 779, 780-81 (2d Cir. 1984).

"'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'"  Bousley v. United States, 523 U.S. at 621, 118 S. Ct. at 1610 (quoting Mabry v. Johnson, 467 U.S. at 508, 104 S. Ct. at 2547-47); accord, e.g., Bradshaw v. Stumpf, 545 U.S. at 186, 125 S. Ct. at 2407.[26/]

"As the Supreme Court has noted, statements made at plea allocutions carry a strong presumption of verity and constitute a formidable barrier in any subsequent collateral proceeding." Marcelin v. Garvin, 97 Civ. 2996, 1999 WL 977221 at *7 (S.D.N.Y. Oct. 26, 1999) (Peck, M.J.) (internal quotation marks omitted, quoting, inter alia, Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977)); accord, e.g., United States v. Grzybek, 283 Fed. Appx. 843, 845 (2d Cir. 2008) ("It is well established that '[a] criminal defendant's self-inculpatory statements made under oath at this plea allocation carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them.'"); United States v. Laano, 58 Fed. Appx. 859, 861 (2d Cir. 2003) ("A defendant who offers a claim of innocence to substantiate altering his plea must overcome 'the strong presumption of verity that attaches to his admissions of guilt at his plea allocution.'").[27/]

---

[26/]   See, e.g., Isaza v. United States, 04 Civ. 6096, 2008 WL 1849170 at *3 (S.D.N.Y. Apr. 24, 2008); Groppi v. United States, 05 Civ. 7058, 2006 WL 416393 at *3 (S.D.N.Y. Feb. 17, 2006); Grullon v. United States, 98 Cr. 524, 04 Civ. 5766, 2006 WL 20498 at *1 (S.D.N.Y. Jan. 4, 2006); Marcelin v. Garvin, 1999 WL 977221 at *6.

[27/]   See, e.g., Adames v. United States, 171 F.3d 728, 732-33 (2d Cir. 1999) (statements at plea allocution "'carry a strong presumption of verity' . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them," citing cases); United States
(continued...)

## 2. <u>Rodriguez's Claim That His Guilty Plea Was Involuntary Is Meritless</u>

Rodriguez claims that his guilty plea "was not voluntarily, knowingly, or intelligently made." (Dkt. No. 1: Pet. ¶ 11(C).)  On direct appeal, Rodriguez's appellate counsel argued, without specificity, that Rodriguez's trial counsel "pressured" him to plead guilty and that Rodriguez's medication affected Rodriguez's ability to understand the plea.  (Ex. H: Rodriguez 1st Dep't Br. at 30-32.)  Rodriguez's appellate counsel seemingly relied on Rodriguez's statements at the sentencing hearing that he plead guilty "'under the influence of medication'" and was "pressured by [his] lawyer."  (<u>See</u> pages 12, 13 above.)

The First Department held:

> The record establishes the voluntariness of defendant's plea.  The plea allocution shows that defendant was rational and coherent during the entire plea proceeding, and when defendant indicated he was on medication, the court appropriately inquired further and satisfied itself that the medication had no effect on his ability to understand the proceedings.  Defendant's claim at sentencing that he had been under the influence of medication at the time of the plea was contradicted by the record, and his conclusory claim that his attorney "pressured" him into pleading guilty was meritless.  Accordingly, neither claim warranted further inquiry by the sentencing court.

---

[27]/    (...continued)
v. <u>Paredes-Acevedo</u>, 04 Cr. 363, 2008 WL 2743208 at *2 (S.D.N.Y. June 23, 2008) ("The defendant's 'statements . . . under oath at his plea allocution carry a "strong presumption of verity," . . . .'"); <u>United States</u> v. <u>Caesar</u>, 94 Cr. 59, 1995 WL 312443 at *3 (S.D.N.Y. May 23, 1995) ("The Court notes that statements made during a plea allocution carry a strong presumption of verity.  Such statements are conclusive absent credible reason justifying departure from their apparent truth.") (citations & internal quotation marks omitted); <u>United States</u> v. <u>Napolitano</u>, 212 F. Supp. 743, 747 (S.D.N.Y. 1963) (Weinfeld, D.J.) ("The defendant's admissions . . . [at guilty plea] are solemn declarations; they are not to be lightly disregarded in favor of his present self-serving assertion . . .").

People v. Rodriguez, 28 A.D.3d 403, 403-04, 813 N.Y.S.2d 429, 430 (1st Dep't 2006).

As the First Department determined, Rodriguez's plea hearing statements refute his current claim of coercion and involuntariness and "demonstrate that the plea was knowing in that it was entered with full knowledge of the charge and the consequences of pleading guilty." Martinez v. Costello, 03 Civ. 2763, 2004 WL 26306 at *6 (S.D.N.Y. Jan. 5, 2004). At his guilty plea allocution, Rodriguez affirmed that he had "the opportunity" to consult his lawyer about his case. (Ex. F: P. 3.) Rodriguez acknowledged that he understood the nature of the charges, the promised sentence (including that the promised sentence was far shorter than the fifty years imprisonment he could have faced if convicted at trial) and the rights he was waiving. (See pages 10-12 above.) Rodriguez admitted, without hesitation, to intentionally causing Mary Vargas' death on August 4, 2002 by drowning her. (See page 10 above.) Furthermore, contrary to Rodriguez's later contention, at sentencing and on direct appeal, Rodriguez specifically affirmed that no promises (besides the promised sentence) had been made to him and that no one had "forced or pressured [him] or threatened [him] in any way." (See page 11 above.) Also contrary to Rodriguez's later contention, Justice Goodman inquired into whether Rodriguez was taking any medications and when Rodriguez responded that he was, Justice Goodman asked whether such medication was "in any way cloud[ing Rodriguez's] mind or prevent[ing Rodriguez] from understanding totally what ha[d] just transpired." (See page 11 above.) Rodriguez answered, "[n]o." (See page 11 above.) Justice Goodman followed up his medication questions by reconfirming with Rodriguez that Rodriguez "fully comprehend[ed] that [he was] pleading guilty

to the charge, it's a plea bargain, and this will cover all another charges for which [he] could get consecutive time. . . theoretically . . . up to 50 years in jail."  (See page 12 above.)

Accordingly, Rodriguez's decision to plead guilty was not coerced and was not made involuntarily or unknowingly.  E.g., United States v. Frayler, No. 00-1078, 229 F.3d 1136 (table), 2000 WL 1459722 at *3 (2d Cir. Oct. 2, 2000) ("[I]f the defendant indicates that he is taking medication or has a condition that may require medication, the court should ensure that defendant retains the ability to understand the proceedings and enter a truly voluntary plea. Judge Stein did just that. After [defendant] said that he took medications for stress and hypertension, Judge Stein asked him several questions about the effect of the medications on his mental state and received answers that reasonably allayed his concern. Although [defendant] later submitted records documenting his severe depression, he did not submit an affidavit or even a letter from a treating source indicating that he was not able to enter a voluntary plea."); Cuero-Flores v. United States, No. 02-CV-6744, 2005 WL 525534 at *2 (E.D.N.Y. Feb. 24, 2005) (denying petitioner's claim that "he was unable to understand the proceedings due to the fact that he was medicated" where petitioner confirmed multiple times to the plea court that the medication he took for sleeping was not affecting his "actions at that time" or his ability to understand the proceedings and "'think clearly'"); United States v. Baum, 380 F. Supp. 2d 187, 210-11 (S.D.N.Y.) (refusing to permit defendant to withdraw her plea "on the ground that it was not knowing and voluntary in light of the medication that [she] had taken" where defendant stated at the plea proceeding that she was "thinking straight" and she had only taken an anti-anxiety medication and a pain killer in the

preceding twenty-four hours, neither of which were "likely to have had any effect on the informed and voluntary nature of the plea"), aff'd, 139 Fed. Appx. 366, 366 (2d Cir. 2005); see, e.g., Rosenberger v. United States, 133 Fed. Appx. 799, 801 (2d Cir. 2005) (Defendant "has set forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty.  Moreover, the plea allocution indicates that [defendant's] guilty plea . . . was knowing and voluntary."); United States v. Davis, 48 Fed. Appx. 809, 811-12 (2d Cir. 2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with the advice of counsel. . . . Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence."); United States v. Bonilla, 17 Fed. Appx. 11, 13 (2d Cir. 2000) ("This Circuit has consistently affirmed denials of motions to withdraw guilty pleas when the defendant's allegations are 'directly contradicted by his clear statements at allocution' that contained sufficient factual detail about the offense."); McCants v. McCoy, No. 00-CV-6444, 2008 WL 4852681 at *5 (W.D.N.Y. Nov. 6, 2008) ("Where a defendant 'has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after

a thorough consultation with his attorney, a district court on habeas review may rely on the

defendant's sworn statements and hold him to them.'") (citations omitted).[28]

Accordingly, Rodriguez's involuntary plea claim should be DENIED.

## III.   RODRIGUEZ'S INEFFECTIVE ASSISTANCE OF COUNSEL HABEAS CLAIM SHOULD BE DENIED AS BARRED BY HIS GUILTY PLEA

Rodriugez claims that his counsel was ineffective for failing to timely file a notice

of intent to introduce psychiatric evidence in support of an extreme emotional disturbance defense.

(Dkt. No. 1: Pet. ¶ 11(B), incorporating Ex. H: Rodriguez 1st Dep't Br. at 15-17.)

---

[28]   See also, e.g., United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); United States v. Gonzalez, 970 F.2d 1095, 1100-01 (2d Cir. 1992); Baker v. Murray, 460 F. Supp. 2d 425, 433 (W.D.N.Y. 2006) ("Furthermore, petitioner has not provided credible evidence that would justify overlooking his statements under oath that he was choosing to plead guilty of his own accord.  In the context of a plea allocution, a defendant's '[s]olemn declarations in open court carry a strong presumption of verity.'"); Gomez v. Duncan, 02 Civ. 0846, 2004 WL 119360 at *19 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.) ("This Court may credit [petitioner's] statements at the plea allocution – that his guilty plea was voluntary and not the result of any threats or promises – over his later allegations of coercion.") (record cites omitted; citing cases); Urena v. New York, 160 F. Supp. 2d 606, 611 (S.D.N.Y. 2001) (Petitioner "stated on the record that he knew that he was giving up the right to trial and the safeguards that accompany that right, that he was not threatened or forced to plead guilty, and that he sold over two ounces of cocaine to an undercover officer.  These statements undermine petitioner's claim that his plea was involuntary . . . .") (citing cases); France v. Strack, No. 99-CV-2510, 2001 WL 135744 at *4 (E.D.N.Y. Jan. 30, 2001) ("Where a petitioner's claims of mistake and coercion find no support in the record and are contradicted by the statements made under oath at the plea proceeding, they do not entitle him to relief."); United States v. Hoffenberg, 169 F.R.D. 267, 275 (S.D.N.Y. 1996), aff'd, Nos. 97-1159, 97-1166, 164 F.3d 620 (table), 1998 WL 695933 (2d Cir. Sept. 22, 1998); Singh v. Kuhlmann, 94 Civ. 2213, 1995 WL 870113 at *7 (S.D.N.Y. Aug. 25, 1995) (Peck, M.J.), report & rec. adopted, 1996 WL 337283 (S.D.N.Y. Jun. 19, 1996) (Cote, D.J.); United States v. Caesar, 94 Cr. 59, 1995 WL 312443 at *4 (S.D.N.Y. May 23, 1995) ("This Court is justified in crediting [defendants'] sworn statements at allocution over their later self-serving allegations of coercion."); United States v. Collado-Gomez, 674 F. Supp. 426, 428 (E.D.N.Y. 1987), aff'd, 854 F.2d 1315 (2d Cir. 1988).

The First Department held that "[o]n the existing record, to the extent it permits review, we find that defendant received effective assistance under the state and federal standards." People v. Rodriguez, 28 A.D.3d 403, 404, 813 N.Y.S.2d 429, 430 (1st Dep't 2006).  The C.P.L. § 440 court also held that Rodriguez received effective assistance of counsel:

> [Counsel] filed appropriate motions on [Rodriguez]'s behalf and represented him diligently at all court appearances, including a pretrial Huntley hearing, plea and sentencing.  In a case containing overwhelming evidence of numerous, violent crimes involving three victims, as well as multiple confessions, [Rodriguez] received a significantly favorable plea bargain.  While he may not have received "perfect" representation, without question, he received the "meaningful representation" required under the law.

(Dkt. No. 14: Gliner 11/3/08 Letter Ex.: Justice Silverman 440 Decision at 2, citations omitted.)

Rodriguez is barred from raising his ineffective assistance of counsel claim because he waived it by pleading guilty.

In Tollett v. Henderson, the Supreme Court reversed a grant of habeas relief, holding:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608 (1973).  "The focus of a federal habeas inquiry in a case involving a guilty plea is 'the voluntariness of the plea, not the existence . . . of an antecedent constitutional infirmity.'  Consequently, an unconditional guilty plea waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not

affect the voluntariness of the plea."[29/] <u>Canal</u> v. <u>Donelli</u>, No. 06-CV-1490, 2008 WL 4287385 at *3

(N.D.N.Y. Sept. 17, 2008) (quoting <u>Tollett</u>; citation omitted; citing cases); <u>see also</u>, <u>e.g.</u>, <u>United</u>

<u>States</u> v. <u>Torres</u>, 129 F.3d 710, 716 (2d Cir. 1997) (On direct appeal, "declin[ing] to address

[defendant]'s argument that his counsel was constitutionally ineffective by failing to interview and

call certain witnesses at a pretrial suppression hearing. A defendant who 'pleads guilty

unconditionally while represented by counsel may not assert independent claims relating to [the

deprivation of constitutional rights that occurred] prior to the entry of the guilty plea.'") (brackets

in original); <u>United States</u> v. <u>Coffin</u>, 76 F.3d 494, 498 (2d Cir.) ("Although [defendant] complains

---

[29/]     "There is an exception to the <u>Tollett</u> rule where state law permits defendants to appeal certain
claims even after pleading guilty."  <u>Vasquez</u> v. <u>Parrott</u>, 397 F. Supp. 2d 452, 463 n.5
(S.D.N.Y. 2005) (citing <u>Lefkowitz</u> v. <u>Newsome</u>, 420 U.S. 283, 289-90, 95 S. Ct. 886, 889-90
(1975)).  In <u>Lefkowitz</u> v. <u>Newsome</u>, the Supreme Court held that the petitioner's claim of an
alleged unconstitutional search and seizure was not barred by his guilty plea because New
York law permits a defendant to appeal suppression claims after pleading guilty.  <u>Lefkowitz</u>
v. <u>Newsome</u>, 420 U.S. at 290, 95 S. Ct. at 889-90; <u>see</u> C.P.L. § 710.70(2) ("An order finally
denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing
judgment of conviction notwithstanding the fact that such judgment is entered upon a plea
of guilty.").  The <u>Lefkowitz</u> v. <u>Newsome</u> exception does not apply here because New York
law does not permit a defendant to appeal ineffective assistance of counsel claims relating
to events prior to the plea that do not impact the voluntariness of the plea. <u>See</u>, <u>e.g.</u>, <u>Vasquez</u>
v. <u>Parrott</u>, 397 F. Supp. 2d at 463 n.5 ("The <u>Lefkowitz</u> exception does not apply here,
because claims of ineffective assistance of counsel relating to events prior to the plea that do
not impact the voluntariness of the plea do not survive a guilty plea."); <u>People</u> v. <u>Petgen</u>, 55
N.Y.2d 529, 534-35, 450 N.Y.S.2d 299, 301 (1982) ("Nor does defendant's assertion in this
case that he was denied effective assistance of counsel survive his plea. There is no
suggestion that, aside from the asserted default of the first attorney in failing to make a
suppression motion, the acceptance of the plea was infected by any ineffective assistance of
counsel. . . . [I]t cannot be said that any ineffective assistance of counsel vitiated defendant's
plea of guilty premised as it was on advice of counsel (as to which there is now no suggestion
of incompetency) comprehending, <u>inter alia</u>, the very claims of ineffective assistance of
counsel that defendant now urges on us.").

of ineffective assistance of [his original] counsel, . . . [h]e does not complain that his successor counsel, who represented him at the time of his [guilty] plea rendered ineffective assistance. . . . [Defendant's] guilty plea effectively waived all ineffective assistance claims relating to events prior to the guilty plea."), cert. denied, 517 U.S. 1147, 116 S. Ct. 1445 (1996); Lebowitz v. United States, 877 F.2d 207, 209 (2d Cir. 1989) ("The settled rule is that a defendant who knowingly and voluntarily enters a guilty plea waives all nonjurisdictional defects in the prior proceedings."); Giles v. Giambruno, No. 04-CV-779, 2007 WL 2859769 at *7 (W.D.N.Y. Sept. 26, 2007) (A "petitioner's unconditional guilty plea waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of the plea."); Sullivan v. Goord, No. 05-CV-6060, 2007 WL 2746900 at *3-4 (W.D.N.Y. Sept. 19, 2007) (Petitioner's "claims of ineffectiveness ascribed to [his first] attorney . . . are barred under Tollett v. Henderson because the substance of those claims do not relate to the voluntariness of [petitioner's] plea or the advice he received with regard to pleading guilty."); Schwartz v. Connell, 05 Civ. 10305, 2006 WL 3549660 at *4 (S.D.N.Y. Dec.6, 2006) (applying to a habeas petition the Second Circuit's "settled rule . . . that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings'" and the Second Circuit's application of this rule "to ineffective assistance of counsel claims directed at defense counsel's legal errors"); Clendinen v. Unger, 05 Civ. 7657, 2006 WL 2465176 at *5 (S.D.N.Y. Aug. 22, 2006); Valentine v. Lord, 03 Civ. 4834, 2006 WL 1997708 at *5-6 (S.D.N.Y. July 18, 2006) (A "petitioner's guilty plea effectively waives all ineffective assistance claims prior to the plea that do not affect the voluntariness of the plea."); Vasquez v. Parrott, 397 F. Supp. 2d at 463 ("The petitioner's unconditional guilty plea waived all

claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of his plea."); Pryor v. McCoy, No. 96-CV-1810, 1997 WL 436809 at *1 (N.D.N.Y. July 25, 1997) (Pooler, D.J.) ("An unconditional guilty plea . . . waives ineffective assistance of counsel claims except as they relate to the voluntary nature of a plea.").

Here, Rodriguez's claim that his counsel was ineffective for failing to timely file a notice of intent to introduce psychiatric evidence is foreclosed by his guilty plea because it relates to events prior to the guilty plea that do not affect the voluntariness of the plea. E.g., Canal v. Donelli, 2008 WL 4287385 at *3 (Petitioner's claim that counsel was ineffective for "fail[ing] to call witnesses at the suppression hearing, fail[ing] to object at that hearing, fail[ing] to obtain material facts and documents for the hearing, fail[ing] to call [petitioner] to testify before the grand jury, and fail[ing] to complete the record of [petitioner]'s arrest at the suppression hearing. . . . [is] precluded because all bases for that claim occurred before [petitioner] entered a plea of guilty."); Schwartz v. Connell, 2006 WL 3549660 at *5 ("Petitioner argues that [trial counsel's] not moving to dismiss the charges did affect his plea because had he known of this 'prosecution-ending' motion, he would not have pled guilty. . . . A motion to dismiss for a duplicitous indictment is similar to a speedy trial motion in that both can result in a dismissal of charges against the defendant. Both errors, however, are rendered irrelevant in the face of defendant's plea of guilty since this admission is, in most cases, convincing factual evidence of actual guilt."); Clendinen v. Unger, 2006 WL 2465176 at *5 (Petitioner's claim that counsel was ineffective for "fail[ing] to secure petitioner's right to testify before the grand jury, fail[ing] to adopt petitioner's pro se speedy trial motion, fail[ing] to submit a timely grand jury notice, and fail[ing] to seek Rosario material . . . relate to

events which preceded petitioner's guilty plea.  As such, [the ineffective assistance claims] cannot form the basis for a successful habeas petition."); <u>Vasquez</u> v. <u>Parrott</u>, 397 F. Supp. 2d at 464 ("The petitioner's unconditional guilty plea waives the separate claim that he was denied effective assistance of counsel because of his counsel's failure to support the second speedy trial motion, because that motion did not relate to the character of his guilty plea.").

While the state courts denied Rodriguez's ineffective assistance claim on different grounds, that does not prevent this Court from denying Rodriguez's ineffective assistance claim on this basis.  The rule that a guilty plea bars ineffective assistance claims as to assistance other than as to the decision to plead guilty is not a <u>state</u> procedural bar but a matter of federal jurisprudence.

Accordingly, Rodriguez's ineffective assistance claim should be DENIED as barred by his guilty plea.

## IV.   RODRIGUEZ'S CLAIM THAT JUSTICE GOODMAN DEPRIVED HIM OF HIS RIGHT TO COUNSEL BY NOT ASSIGNING HIM CONFLICT-FREE COUNSEL AT SENTENCING SHOULD BE  DENIED

Rodriguez claims that Justice Goodman erred in denying his request for substitute counsel at sentencing.  (Dkt. No. 1: Pet. ¶ 11(D).)  At sentencing, prior to the imposition of sentence, Rodriguez moved to "dismiss" his lawyer because he pled guilty "under the influence of medication" and because he was "pressured by [his] lawyer to take a Plea offer."  (<u>See</u> page 12 above.)  Without offering Rodriguez's counsel an opportunity to speak, Justice Goodman denied Rodriguez's request, noting:  "For the record, Mr. Rodriguez, there was no problem at the time this plea allocution was made. [Defense counsel] Mr. Soto worked very hard on this case.  You're lucky.

Could have gone to jail for fifty years." (See page 12 above.)  Justice Goodman proceeded to

sentence Rodriguez as promised. (See page 13 above.)

On direct appeal, Rodriguez's new appellate counsel asserted that the sentencing

court "abused its discretion in summarily denying [Rodriguez]'s applications for new counsel,"

arguing that:

> [Rodriguez] claimed that defense counsel had pressured him to plead guilty. (S. 3.)
> Moreover, [Rodriguez] was entitled to new, conflict-free, counsel, who could have
> provided objective advice not only on whether to plead guilty at all, but on whether
> to waive his right to appeal and thereby waive the right to claim on appeal that he
> was denied the effective assistance of counsel by counsel's failure to file and serve
> timely CPL 250.10 notice.

(Ex. H: Rodriguez 1st Dep't Br. at 35-36.)  The First Department affirmed Justice Goodman's

decision, holding:

> The record establishes the voluntariness of [Rodriguez]'s plea. . . .
> [Rodriguez]'s claim at sentencing that he had been under the influence of medication
> at the time of the plea was contradicted by the record, and his conclusory claim that
> his attorney "pressured" him into pleading guilty was meritless.  Accordingly,
> neither claim warranted further inquiry by the sentencing court.  Similarly,
> [Rodriguez] did not establish good cause for substitution of counsel at sentencing.

People v. Rodriguez, 28 A.D.3d 403, 403-04, 813 N.Y.S.2d 429, 430 (1st Dep't 2006).

Rodriguez's appellate counsel's letter seeking leave to appeal argued that the Court

of Appeals should grant leave to "clarify the circumstances under which the trial courts must inquire

when a defendant requests a substitution of counsel, particularly when there is already objective

evidence in the record and known to the court of defense counsel's unreasonable failures in

representation of that defendant in that case." (Dkt. No. 19: Rodriguez 5/26/06 N.Y. Ct. App. Leave

Letter at 3.)

Since Rodriguez's appeal failed to clearly articulate whether Justice Goodman's claimed error lay in his failure to appoint new counsel for the withdrawal motion, sentencing, or both, this Court will address both.

### A.   The Sentencing Court Properly Denied Rodriguez's Request for New Counsel on His Plea Withdrawal Motion

To the extent that Rodriguez is claiming that Justice Goodman erred by not appointing new counsel for Rodriguez's plea withdrawal motion, the Second Circuit considered and rejected a similar claim in Hines v. Miller, 318 F.3d 157 (2d Cir.), cert. denied, 538 U.S. 1040, 123 S. Ct. 2089 (2003).  In Hines, petitioner Hines pled guilty to second degree murder, but before sentencing "filed a pro se motion to withdraw his plea on the ground that he was innocent and had been coerced into pleading guilty by his attorney." Hines v. Miller, 318 F.3d at 159.  At sentencing, "defense counsel declined to comment on [petitioner's] allegation that counsel had pressured him into pleading guilty, but asked to be relieved in the event the court allowed withdrawal of the plea," and asked "to have new counsel appointed to argue the motion on proper papers." Hines v. Miller, 318 F.3d at 159.  Hines told the state court that despite his assertions at the time of his plea that he had not been coerced, "he was innocent of the crime and had only pleaded guilty 'out of fear, pressure, extreme pressure.'" Hines v. Miller, 318 F.3d at 159.  The sentencing court denied Hines' motion to withdraw his guilty plea, asserting that Hines "had inculpated himself fully when he entered the guilty plea and that he had stated then that no one had forced him to plead guilty." Hines v. Miller, 318 F.3d at 159.  The Appellate Division affirmed, despite Hines' claims that the

trial court erred in denying the motion to withdraw his guilty plea without appointing new counsel and without holding an evidentiary hearing.  Hines v. Miller, 318 F.3d at 159.

The Second Circuit in Hines considered whether the trial court erred in not appointing new counsel to argue the plea withdrawal motion.  Hines v. Miller, 318 F.3d at 162-64. The Second Circuit recognized that the federal appellate courts have used various approaches to address this issue.  Hines v. Miller, 318 F.3d at 164.  The Second Circuit has "applied Strickland v. Washington, Cuyler v. Sullivan, or a similar analysis to determine whether the defendant received ineffective assistance of counsel, and have generally decided the case on the basis of whether the underlying motion had sufficient merit to create an actual conflict of interest or present a 'plausible alternative defense strategy.'"  Hines v. Miller, 318 F.3d at 163.[30/]  A second group of courts had sought to determine "whether the failure to appoint substitute counsel on the motion to withdraw was a violation of the right to counsel."  Hines v. Miller, 318 F.3d at 163.  Other "courts have applied more than one analysis."  Hines v. Miller, 318 F.3d at 163-64.  The Second Circuit noted that "numerous reviewing courts, irrespective of the analysis employed, have affirmed the denial

---

[30/]    See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Cuyler v. Sullivan, 446 U.S. 335, 1000 S. Ct. 1708 (1980).  For a discussion of the Strickland v. Washington standard of ineffective assistance of counsel, see, e.g., Edmonds v. Purdy, 08 Civ. 8808, 2009 WL 483189 at *16-17 (S.D.N.Y. Feb. 26, 2009) (Peck, M.J.) (& cases cited therein).  For a discussion of the Cuyler v. Sullivan standard governing an ineffective assistance of counsel claim based on an asserted conflict of interest, see, e.g., Quinones v. Miller, 01 Civ. 10752, 2003 WL 21276429 at *26-28 (S.D.N.Y. June 3, 2003) (Peck, M.J.) (& cases cited therein), report & rec. adopted, 2005 WL 730171 (S.D.N.Y. Mar. 31, 2005), aff'd, 224 Fed. Appx. 44 (2d Cir. 2007).

of a withdrawal motion despite the failure to appoint new counsel." <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 164 (citation omitted).

The Second Circuit stated that "[t]he Supreme Court has, of course, issued numerous opinions concerning various aspects of a defendant's right to counsel. But the [Supreme] Court has never specifically addressed a claim such as the one before us, nor has it stated how such a claim should be analyzed, <u>i.e.</u>, as a claim that petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea, or as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest adversely affected counsel's performance." <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 163 (citations omitted).

The Second Circuit concluded that "[g]iven the many divergent approaches and outcomes in federal courts that have applied clearly established Supreme Court precedent to the facts at issue and the absence of any Supreme Court decision concerning this type of claim, we find no basis for concluding . . . that the Appellate Division's decision here constituted an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States." <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 164.[31/]

---

[31/]    <u>See also</u>, <u>e.g.</u>, <u>Lopez</u> v. <u>Miller</u>, 05 Civ. 7060, 2007 WL 2032839 at *12 (S.D.N.Y. July 17, 2007) (Peck, M.J.); <u>Benitez</u> v. <u>Green</u>, 02 Civ. 63321, 2005 WL 289753 at *10-11 (S.D.N.Y. Jan. 31, 2005); <u>Martinez</u> v. <u>Costello</u>, 2004 WL 26306 at *7-8; <u>Rivera</u> v. <u>New York</u>, 2003 WL 22234697 at *5 ("In light of the Second Circuit's decision in <u>Hines</u>, the Appellate Division's decision regarding [petitioner's] ineffective assistance of counsel claim [seeking new counsel for motion to withdraw guilty plea] is unquestionably not an unreasonable application of clearly established Federal law."); <u>Jenkins</u> v. <u>Artuz</u>, 2003 WL 21499889 at *3; <u>Hutchings</u> v. <u>Herbert</u>, 260 F. Supp. 2d 571, 581 (W.D.N.Y. 2003).

Here, as in <u>Hines</u>, in ruling on Rodriguez's claim that Justice Goodman erred by not assigning him conflict-free counsel after he asserted that counsel had pressured him to plead guilty, the First Department found that Rodriguez "did not establish good cause for substitution of counsel at sentencing." <u>People</u> v. <u>Rodriguez</u>, 28 A.D.3d 403, 403-404, 813 N.Y.S.2d 429, 430 (1st Dep't 2006).  As in <u>Hines</u>, the First Department's finding regarding Rodriguez's claim that the trial court erred in its decision to deny his request to appoint new counsel for the plea withdrawal motion was not an unreasonable application of Supreme Court precedent.

**B.    Justice Goodman Properly Denied Rodriguez's Request for New Counsel at Sentencing**

This issue is governed by the Second Circuit's decision in <u>Lopez</u> v. <u>Scully</u> where, in the context of a state habeas petition, the Second Circuit considered whether an actual conflict of interest arises at sentencing when a defendant has moved to withdraw his plea based on counsel's alleged coercion.  <u>Lopez</u> v. <u>Scully</u>, 58 F.3d 38, 41 (2d Cir. 1995).   In <u>Lopez</u>, after the judge ruled at a <u>Sandoval</u> hearing that if Lopez testified at trial the prosecutor could question him about a prior felony conviction, defense counsel asked if the prior plea offer (involving a sentence of fifteen years to life imprisonment) still was available.  <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 40.  The judge said no, but "indicated" that he would sentence Lopez to eighteen years to life imprisonment if Lopez pled guilty to the entire indictment.  <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 40.  Faced with a twenty-five year to life sentence if convicted at trial, Lopez pled guilty.  <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 40.

Between the plea and sentencing dates, Lopez moved pro se to withdraw his guilty plea, alleging that counsel had coerced him to plead guilty and requesting assignment of new

counsel. <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 40.  At the sentencing hearing, Lopez's counsel "'den[ied] each and every allegation contained'" in Lopez's pro se motion. <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 40.   The sentencing court told counsel to "'save [his] breath,'" denied Lopez's motion, and sentenced Lopez without inquiring into counsel's "willingness or ability to represent his client further."  <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 40.  When the sentencing court asked Lopez's counsel if he wished to say anything with respect to sentencing, "the attorney said that he would 'leave the sentencing where it properly belongs, in the hands of the court.'"  <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 40.  The judge "sentenced Lopez to the expected sentence of eighteen years to life imprisonment."  <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 40.

The Second Circuit held that Lopez's motion to withdraw his plea based on counsel's alleged coercion produced an actual conflict of interest. <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 41.  "[T]o argue in favor of his client's motion would require [counsel] admitting serious ethical violations and possibly subject [counsel] to liability for malpractice; on the other hand, '[a]ny contention by counsel that defendant's allegations were not true would . . . contradict his client.'" <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 41.  The Second Circuit recognized, however, that to establish a Sixth Amendment violation the petitioner must still "show that the actual conflict of interest adversely affected his lawyer's performance."  <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 41. "The test requires a defendant to demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interest."  <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 41 (quotations omitted).

The Second Circuit ruled that defense counsel's opposition to the motion to withdraw the plea did not meet the "test." Lopez v. Scully, 58 F.3d at 42.  The Second Circuit noted that "the term 'plausible alternative defense strategy' does not embrace all possible courses of action open to a defense attorney; it refers to those which a zealous advocate would reasonably pursue under the circumstances." Lopez v. Scully, 58 F.3d at 42; accord, e.g., Eisemann v. Herbert, 401 F.3d 102, 107 (2d Cir. 2005) (alternative must possess sufficient substance to make it viable).  In light of Lopez's plea allocution, during which he admitted committing the charged acts, indicated that he "understood his rights" and affirmed that no one had coerced him into accepting the plea, the Second Circuit concluded that supporting Lopez's plea withdrawal motion was not a plausible alternative strategy for counsel. Lopez v. Scully, 58 F.3d at 42.  The Second Circuit stated that a challenge to the plea's voluntariness "would undoubtedly have been rejected and would have risked antagonizing the trial court immediately before sentencing.  Moreover, if successful the motion would have jeopardized the availability of a favorable plea and permitted the judge to impose a considerably higher sentence after trial." Lopez v. Scully, 58 F.3d at 42.

The Second Circuit did, however, find that counsel's failure to argue for sentencing leniency met the test for adverse effect on representation. Lopez v. Scully, 58 F.3d at 42. The Second Circuit held that a leniency argument "'"possessed sufficient substance to be a viable alternative"'" because the sentencing court retained discretion to sentence petitioner to less than the "indicated" sentence of eighteen years to life, mitigating circumstances existed in Lopez's case, and counsel "had undermined his client's credibility moments earlier by denying the truth of the

allegations in the pro se motion." <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 42.  Thus, the Second Circuit concluded that "[i]n light of the negative impression that such comments could have made on the court, arguing zealously for mitigation at sentencing was not only a viable alternative for the attorney but an advisable one." <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 42.  The Second Circuit also determined that counsel had refrained from arguing for leniency because of his actual conflict of interest. <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 42-43 (Counsel had an "incentive to undermine the credibility, and hence the character, of his client in order to reduce the risk of recriminations for any improper conduct.").  Therefore, the Second Circuit decided that Lopez had adequately shown that "an actual conflict of interest adversely affected his attorney's performance in violation of his Sixth Amendment right to effective assistance of counsel," and Lopez was "entitled to be resentenced in state court with new counsel representing him." <u>Lopez</u> v. <u>Scully</u>, 58 F.3d at 43.

Since <u>Lopez</u>, the Second Circuit has made clear that "<u>Lopez</u> should not be read as holding that the mere accusation of coercion, without more, is sufficient to create a conflict of interest." <u>United States</u> v. <u>Davis</u>, 239 F.3d 283, 286 (2d Cir. 2001); <u>accord</u>, <u>e.g.</u>, <u>Clendinen</u> v. <u>Unger</u>, 05 Civ. 7657, 2006 WL 2465176 at *8 (S.D.N.Y. Aug. 22, 2006); <u>United States</u> v. <u>Watts</u>, No. 98-CR-94, No. 01CV1013, 2004 WL 1058118 at *6 (D. Conn. May 10, 2004); <u>Hines</u> v. <u>Miller</u>, 156 F. Supp. 2d 324, 332 (S.D.N.Y. 2001), <u>aff'd on other grounds</u>, 318 F.3d 157, 162-64 (2d Cir.), <u>cert. denied</u>, 538 U.S. 1040, 123 S. Ct. 2089 (2003).

Even assuming arguendo that an actual conflict existed in this case, Rodriguez cannot demonstrate that any such conflict adversely affected counsel's representation.  Justice

Goodman did not even allow counsel the opportunity to respond to the allegations of coercion.  (See page 12 above.)  Thus, counsel did not affect his client's credibility.  Furthermore, unlike Lopez where the judge retained discretion as to the sentence, Justice Goodman did not retain discretion as to Rodriguez's sentence because Rodriguez had entered into a plea bargain with an agreed sentence of twenty-one years to life imprisonment.  (See page 13 above.)  Since pleading for leniency from Justice Goodman was not a "plausible alternative defense strategy" for defense counsel, Rodriguez cannot show that an actual conflict adversely affected counsel's performance. See, e.g., Clendinen v. Unger, 2006 WL 2465176 at *9 (denying petitioner's conflict of interest claim because any alleged conflict arising from petitioner's motion to withdraw his plea based on counsel's coercion did not affect counsel's performance at sentencing.  "[U]nlike counsel in Lopez [, counsel] did advocate on petitioner's behalf."); Tucker v. Artuz, 99 Civ.1914, 2003 WL 1846904 at *1 (S.D.N.Y. Apr. 9, 2003) (denying petitioner's habeas claims that counsel was ineffective at sentencing and that the court erred by not appointing new counsel at sentencing  because petitioner "failed to demonstrate any prejudice since he received precisely the sentence he agreed to accept in his plea bargain"); People v. Ramos, 44 A.D.3d 438, 439, 843 N.Y.S.2d 274, 275 (1st Dep't 2007) (holding in the alternative that, "on the existing record," counsel was not ineffective for "resting upon the negotiated plea and failing to argue for even greater leniency"), appeal denied, 9 N.Y.3d 1037, 852 N.Y.S.2d 23 (2008); People v. Guerrero, 27 A.D.3d 386, 387, 811 N.Y.S.2d 404, 405 (1st Dep't 2006) (Counsel was not ineffective for failing to argue for leniency to the sentencing court.  "To the contrary, . . . the only reasonable conclusion to be drawn is that [counsel] would have

been remiss if he had. After all, if counsel somehow had been able to succeed in persuading the court that the bargained-for sentences, which were highly favorable to defendant, were excessive, the court would have been obligated to vacate the plea at the People's request.").

Since Rodriguez cannot demonstrate that an actual conflict of interest adversely affected counsel's performance at sentencing, Rodriguez cannot demonstrate that Justice Goodman abused his discretion in denying his request for new counsel at sentencing.   Accordingly, Rodriguez's habeas claim should be DENIED.

## CONCLUSION

For the reasons set forth above, Rodriguez's habeas petition should be DENIED in its entirety.  A certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Rakoff (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994);

Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.),

cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892

F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy

v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a),

6(d).

Dated:        New York, New York
              March 13, 2009

                                          Respectfully submitted,


                                          _____
                                          **Andrew J. Peck**
                                          United States Magistrate Judge


Copies to:    Jesse Rodriguez
              Susan Gliner, Esq.
              Judge Jed S. Rakoff